Robert F. Kramer (SBN 181706)
rkramer@feinday.com
Sal Lim (SBN 211836)
slim@feinday.com
Jeremiah A. Armstrong (SBN 253705)
jarmstrong@feinday.com
FEINBERG DAY KRAMER ALBERTI
LIM TONKOVICH & BELLOLI LLP
577 Airport Boulevard, Suite 250
Burlingame, California 94010
Telephone: (650) 825-4300
Facsimile: (650) 460-8443

Andrew G. DiNovo (admitted *pro hac vice*)
adinovo@dinovoprice.com
Nicole E. Glauser (admitted *pro hac vice*)
nglauser@dinovoprice.com
DINOVO PRICE LLP
7000 N. MoPac Expressway, Suite 350
Austin, Texas 78731
Telephone: (512) 539-2626
Facsimile: (512) 539-2627

Attorneys for KlausTech LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| KLAUSTECH LLC,<br><br>    *Plaintiff*,<br><br>V.<br><br>GOOGLE LLC,<br><br>    *Defendant*. | Case No. 4:20-CV-04459-JSW<br><br>**KLAUSTECH'S RESPONSE IN OPPOSITION TO DEFENDANT GOOGLE LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS OF INVALIDITY OF U.S. PATENT NO. 6,128,651**<br><br>Date: January 8, 2021<br>Time: 9:00 a.m.<br>Place: Courtroom 5, 2nd Floor<br>Judge: The Hon. Jeffrey S. White |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

TABLE OF ABBREVATIONS AND CITATION FORM ...................................................... vi

SUMMARY OF THE ARGUMENT ................................................................................... 1

ARGUMENT ................................................................................................................ 2

I.      GOOGLE IS COLLATERALLY ESTOPPED FROM CHALLENGING THE VALIDITY OF THE '651 PATENT UNDER § 101 ........................................................................................................... 2

     A.    Factual and Procedural Background ............................................................ 2

         1.    Google Already Tried and Failed to Invalidate the '651 Patent under § 101 in *KlausTech I* ................................................ 2

         2.    Google Now Impermissibly Seeks to Relitigate the Patent Eligibility of the '651 Patent ............................................ 3

         3.    KlausTech Has Not Taken Inconsistent Positions Regarding the Subject Matter of the '651 Patent or the Scope of the Claims ............................................................... 3

     B.    Legal Standard ........................................................................................ 5

     C.    The Elements of Collateral Estoppel Are Satisfied Here. ............................... 5

     D.    There Is No Basis to Avoid Applying Collateral Estoppel Here. ............................................................................................................ 7

II.     THE '651 PATENT CLAIMS ARE PATENT ELIGIBLE UNDER § 101 ........................................................................................................... 8

     A.    Applicable Law ....................................................................................... 8

     B.    Background of the Patent ......................................................................... 9

     C.    *Alice* Step One: The '651 Patent Claims Are Patent Eligible ......................... 11

         1.    The Claims Are Directed to Specific Technical Improvements to Technological Problems Unique to Internet Advertising .............................................................. 11

         2.    The Claims Are Not Directed to An Abstract Idea ................................ 12

         3.    None of the New Cases Cited by Google Support Reversing this Court's Prior Decision ....................................... 13

     D.    *Alice* Step Two: The Claims Recite a Patent Eligible Application of Any Purportedly Abstract Idea ................................... 14

i

CONCLUSION ................................................................................................................ 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ii

**CASES**

*Affinity Labs of Texas, LLC v. DirecTV, LLC,*
 838 F.3d 1253 (Fed. Cir. 2016) ........................................................................... 8

*Alice Corp. Pty. Ltd. v. CLS Bank,*
 573 U.S. 208 (2014) ..................................................................................... 1, 9

*Ancora Techs, Inc. v. HTC America, Inc.,*
 908 F.3d 1343 (Fed. Cir. 2018) ........................................................................... 8

*Astrazeneca UK Ltd. v. Watson Labs., Inc. (NV),*
 905 F. Supp. 2d 596 (D. Del. 2012) .................................................................... 7

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC,*
 827 F.3d 1341 (Fed. Cir. 2016) ......................................................................... 15

*Bingo Card Minder Corp. v. Power Bingo Corp.,*
 No. C 96-1048 FMS, 1996 WL 711515 (N.D. Cal. Nov. 25, 1996) .................. 7

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.,*
 778 F. App'x 882 (Fed. Cir. 2019) ..................................................................... 13

*Brunswick Corp. v. Chrysler Corp.,*
 408 F.2d 335 (7th Cir. 1969) ............................................................................... 7

*buySAFE, Inc. v. Google, Inc.,*
 765 F.3d 1350 (Fed. Cir. 2014) ......................................................................... 13

*Chargepoint, Inc. v. SemaConnect, Inc.,*
 920 F.3d 759 (Fed. Cir. 2019) ............................................................................. 8

*Cisco Sys., Inc. v. Capella Photonics, Inc.,*
 No. 20-CV-01858-EMC, 2020 WL 4923697 (N.D. Cal. Aug. 21, 2020) .......... 7

*Customedia Techs., LLC v. Dish Network Corp.,*
 951 F.3d 1359 (Fed. Cir. 2020) ......................................................................... 14

*DDR Holdings, L.L.C. v. Hotels.com, L.P.,*
 773 F.3d 1245 (Fed. Cir. 2014) ................................................................ 9, 11, 12

*Durkin v. Shea & Gould,*
 92 F.3d 1510 (9th Cir.1996) ................................................................................ 7

*Elan Microelectronics Corp. v. Apple, Inc.,*
 No. C 09-01531 RS, 2010 WL 4510909 (N.D. Cal. Nov. 1, 2010) .................... 6

*Elec. Pwr Grp., LLC v. Alstrom S.A.,*
 830 F.3d 1350 (Fed. Cir. 2016) ......................................................................... 13

iii

*Enfish, L.L.C. v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ............................................................... 9, 12

*E-Pass Techs., Inc. v. 3Com Corp.*,
    343 F.3d 1364 (Fed. Cir. 2003) ..................................................................... 4

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
    879 F.3d 1089 (Fed. Cir. 2016) ................................................................... 14

*Garcia v. Prudential Ins. Co. of Am.*,
    293 P.3d 869 (2013) ...................................................................................... 6

*Genetic Techs. Ltd. v. Merial L.L.C.*,
    818 F.3d 1369 (Fed. Cir. 2016) ..................................................................... 9

*Gilldorn Sav. Assoc. v. Commerce Sav. Assoc*,
    804 F.2d 390 (7th Cir. 1986) ......................................................................... 6

*Golden State Bottling Co. v. NLRB*,
    414 U.S. 168 (1973) ...................................................................................... 6

*In re Brown*,
    951 F.2d 564 (3d Cir. 1991) ........................................................................... 6

*In re Morsa*,
    809 F. App'x 913 (Fed. Cir. 2020) ........................................................ 13, 15

*Intellectual Ventures I LLC v. Capital One Bank*,
    792 F.3d at 1363 (Fed. Cir. 2015) ............................................................... 13

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
    850 F.3d 1332 (Fed. Cir. 2017) ................................................................... 13

*Kloster Speedsteel AB v. Crucible Inc.*,
    793 F2d 1565 (Fed. Cir. 1986) ..................................................................... 7

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*,
    383 F.3d 1337 (Fed. Cir. 2004) ..................................................................... 7

*Luben Indus., Inc. v. United States*,
    707 F.2d 1037 (9th Cir. 2006) ....................................................................... 5

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    566 U.S. 66 (2012) ........................................................................................ 8

*Paulo v. Holder*,
    669 F.3d 911 (9th Cir. 2011) ......................................................................... 5

*Pellerin v. Nevada Cty.*,
    635 Fed. App'x 345 (9th Cir. 2015) .............................................................. 6

*Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.*,
    170 F.3d 1373 (Fed. Cir. 1999) ..................................................................... 7

iv

*Secured Mail Sol. LLC v. Universal Wilde, Inc.*,
    873 F.3d 905 (Fed. Cir. 2017) ........................................................................................ 14

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt, LLC*,
    778 F.3d 1311 (Fed. Cir. 2015) ........................................................................................ 5

*Synopsis, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138 (Fed. Cir. 2016) ...................................................................................... 13

*Syverson v. Int'l Bus. Machines Corp.*,
    472 F.3d 1072 (9th Cir. 2007) .......................................................................................... 5

*Trading Techs. Int' Inc. v. IBG LLC*,
    921 F.3d 1084 (Fed. Cir. 2019) ...................................................................................... 13

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017) ...................................................................................... 13

*UCP Int'l Co. Ltd. v. Balsam Brands Inc.*,
    2017 WL 5068568 (N.D. Cal. Nov. 3, 2017) ................................................................... 6

*UCP Int'l Co. Ltd. v. Balsam Brands Inc.*,
    787 Fed. App'x 691 (Fed. Cir. 2019) ............................................................................... 6

*Ultramerical, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) ........................................................................................ 14

*Uniloc USA, Inc. v. LG Elec. USA, Inc.*,
    957 F.3d 1303 (2020) ................................................................................................ 11, 12

*Voter Verified, Inc. v. Election Sys. & Software LLC*,
    887 F.3d 1376 (Fed. Cir. 2018) .................................................................................... 6, 7

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
    No. 17-CV-03848-RS, 2018 WL 2585436 (N.D. Cal. May 8, 2018) .................... 5, 6, 7, 8

**Parties**

| | |
|---|---|
| KlausTech | Plaintiff KlausTech LLC |
| Google | Defendant Google LLC |

**Defined Terms**

| | |
|---|---|
| '651 Patent | U.S. Patent No. 6,128,651 |
| Google Ad Manager | Collectively, Google Ad Manager and, as it was formerly named, DoubleClick for Publishers/AdExchange |
| *KlausTech I* | *KlausTech, Inc. v. Google LLC* (previously styled *KlausTech, Inc. v. AdMob, Inc.*), Case No. 4:10-cv-05899-JSW (N.D. Cal.) |
| The § 101 Decision | D.I. 29-5: Order Denying Motion for Judgment on the Pleadings in *KlausTech I* (N.D. Cal. Aug. 31, 2015) |
| PTO | United States Patent and Trademark Office |
| PTAB | Patent Trial and Appeal Board of the PTO |
| CBMR | Covered Business Method Review |

**Citation Form**

| | |
|---|---|
| Exhibit/Ex. [Letter] | Citations to lettered exhibits herein refer to exhibits attached to the Declaration of Nicole E. Glauser, dated October 22, 2020, filed in support of and concurrently herewith. |
| *KT-I*: D.I. [#] | Citations to *KT-I*: D.I. [#] refer to documents filed in *KlausTech I*. |

\* Unless otherwise noted, all **emphasis** is added.

## SUMMARY OF THE ARGUMENT

This Court already concluded in the prior action between KlausTech and Google that Google is not entitled to judgment on the pleadings of invalidity of the '651 Patent under 35 U.S.C. § 101 because "the claimed system is **patent eligible**." D.I. 29-5 at 5-6. Despite denial of its first Rule 12(c) motion, Google now asserts the same Rule 12(c) motion, rearguing that it is entitled to judgment on the pleadings that the '651 Patent claims are invalid under § 101. *See* D.I. 29. That issue was raised and finally resolved against Google in *KlausTech I*, and Google is collaterally estopped from again challenging invalidity under § 101, at least on a Rule 12(c) motion. For at least this reason, Google's motion should be denied.

Moreover, Google's motion should again be denied on the merits. The claimed invention of the '651 Patent provides a technical solution to a technical problem. The claims recite a specific means of achieving the technical solution. Accordingly, the '651 Patent claims are patent-eligible under the two part test established in *Alice Corp. Pty. Ltd. v. CLS Bank*, 573 U.S. 208 (2014). All the arguments asserted by Google in its current motion (except for Google's incorrect argument regarding KlausTech's purportedly shifting litigation positions) is substantively identical to the arguments Google previously raised in its prior Rule 12(c) motion, which this Court has already considered and correctly rejected after a detailed review of the '651 Patent and controlling caselaw. Google does not and cannot claim that § 101 precedent has changed since the time this Court rejected Google's § 101 arguments. In fact, the Federal Circuit precedent decided after this Court's 2015 decision further confirms the '651 Patent claims are patent eligible.

In a transparent attempt to relitigate arguments that this Court has already rejected, Google wrongly portrays KlausTech as having taken contradictory positions during *KlausTech I*. However, Google's incorrect characterization is based entirely on attorney argument that is not supported by the evidence. Nothing that KlausTech has said undermines the soundness of this Court's § 101 Decision. Ultimately, Google's argument does not provide a basis for avoiding the preclusive effect

1

1    of the Court's decision or for reversing this Court's finding that claims 21 and 25 (or dependent
2    claims 21, 23, 24, 26, 28, and 29) of the '651 Patent are patent eligible under § 101.

3    <center>**ARGUMENT**</center>

4    **I.    GOOGLE IS COLLATERALLY ESTOPPED FROM CHALLENGING THE
         VALIDITY OF THE '651 PATENT UNDER § 101**

6       **A.    Factual and Procedural Background**

7          **1.    Google Already Tried and Failed to Invalidate the
                '651 Patent under § 101 in *KlausTech I***

8          In February 2010, KlausTech sued AdMob, Inc. for infringement of the '651 Patent. *KT-I*:
9    D.I. 1. In May 2010, Google acquired AdMob, Inc. *Id.*: D.I. 166.[1] In July 2015, AdMob filed a Rule
10   12(c) motion for judgment on the pleadings of invalidity of the '651 Patent, arguing that the asserted
11   '651 Patent claims (*i.e.*, independent claims 20 and 25, and dependent claims 21, 23, 24, 26, 28, and
12   29) were patent-ineligible under § 101. *Id.*: D.I. 135. After full briefing, the Court denied the motion,
13   holding that "the claimed system is patent-eligible under 35 U.S.C. section 101" at *Alice* step one.
14   D.I. 29-5 at 5-6.

15         Google was substituted for AdMob, Inc. in *KlausTech I* on April 19, 2016. *KlausTech I*: D.I.
16   166. The same lawyers that represented AdMob, Inc. continued to represent Google in *KlausTech I*.
17   After a *Markman* hearing in April 2016, the Court issued its Claim Construction Order on May 23,
18   2016. D.I. 29-5. In October 2017, the Court denied KlausTech's motion to amend its infringement
19   theory to read on a different parameter of the accused AdMob product, finding that KlausTech's
20   former litigation counsel was not diligent in discovering the basis for the proposed amendment. *KT-*
21   *I*: D.I. 246. In October 2018, the Court struck portions of KlausTech's infringement expert report as
22   constituting new infringement theories not disclosed in the contentions. *Id.*: D.I. 315. Based on the
23   Court's Claim Construction Order and its two discovery orders, KlausTech stipulated, subject to its

---

[1] Pursuant to that acquisition, "all continuing U.S. AdMob employees became Google employees .
. . , and AdMob no longer recognized any revenue after this acquisition." *KT-I*: D.I. 66. After the
acquisition, Google continued to offer a mobile only advertising system under the tradename
AdMob. *Id.*

<center>2</center>

right to appeal, that it could not prove that Google's use of the AdMob product infringed the asserted claims of the '651 Patent. *Id.*: D.I. 328. The Court entered final judgment of noninfringement in Google's favor. *Id.*: D.I. 329. On appeal, the Federal Circuit summarily affirmed the judgment, and *KlausTech I* was terminated in January 10, 2019.

### 2. Google Now Impermissibly Seeks to Relitigate the Patent Eligibility of the '651 Patent

KlausTech filed this new action against Google on July 6, 2020, alleging that Google infringes the '651 Patent based on the use of a product not accused in *KlausTech I—i.e.*, Google Ad Manager. D.I. 1. As in *KlausTech I*, KlausTech's Complaint asserts infringement of at least claims 20 and 25. *Id.* Despite the Court's denial of its previous motion, Google now files another Rule 12(c) motion that again requests judgment on the pleadings of invalidity of the '651 Patent under § 101.

### 3. KlausTech Has Not Taken Inconsistent Positions Regarding the Subject Matter of the '651 Patent or the Scope of the Claims.

KlausTech has consistently and accurately described the teachings and claims of the '651 Patent, including claim 20.

- In its prior opposition, KlausTech accurately represented that (1) "the '651 Patent teaches, *in an embodiment*, a nonconventional use of non-scrolling frames and browser to solve the search engine problem that plagued the prior art systems," relying exclusively on citations to the '651 Patent specification (*id.* at 8 and citations therein); and (2) "[t]he '651 Patent also discloses *embodiments* that solve the advertiser control problem by teaching . . . use[] [of] a central controller to control and record the display of advertisements at browsers," relying on citations to both the '651 Patent specification and claim 20. *See* D.I. 29-4 at 8-9 and citations therein. It further stated that "all of the '651 Patent claims are directed to a specific inventive 'non-scrolling ad display from a website for causing a browser hitting website to undertake a centrally controlled and recorded ad display for guaranteed minimum time intervals.'" *Id.* (quoting D.I. 29-2 at 2:22-25 (Claim 20 preamble).

- In its response to Google's CBMR petition, KlausTech consistently asserted the '651 Patent solves problems associated with the lack of control and knowledge inherent in conventional Internet advertising systems in which the website controls delivery and display of ad content by using a central controller in an unconventional manner to control delivery and display of ad content. D.I. 29-8 at 29.

- In its rebuttal expert report on validity, KlausTech's expert consistently described and set forth opinions regarding the invention's novel use of the central controller. *See* Ex. A (which is a more complete excerpt of Google's exhibit, D.I. 29-7) at ¶¶ 46-49.

3

Contrary to Google's mischaracterizations regarding KlausTech's statements, KlausTech never represented to the Court that solving the search engine indexing problem was "the core of the invention" or that the '651 Patent was exclusively directed to, or even directed primarily to, solving the search engine indexing problem. And, contrary to Google's arguments otherwise, this Court did not base its patentability holding exclusively, or even primarily, on the '651 Patent's claimed solution to the search indexing problem. Indeed, the Court did not once use the term "search indexing problem" or explicitly reference that technological problem. *See generally* D.I. 29-5. Instead, the Court explicitly and correctly based its decision on its findings that "[t]he '651 Patent employs a new approach to **control and monitor** the display of advertisement on Internet browser and seeks to solve technical problems that do not exist in the conventional advertising realm" and that "[t]he patent attempts to address the prevailing problem of advertising on the Internet to **control** the advertising to each web page viewing browser and to **monitor** accurately the timing of the display, with **proof** of the advertisement display to the paying advertiser." D.I. 29-5 at 5.

Contrary to Google's facile characterization of KlausTech's *Markman* hearing arguments, KlausTech has not (and does not now) disavow or otherwise disclaim that the '651 Patent is directed to the search indexing problem. *See* D.I. 29-6 at 83:17-19 (reconfirming at the *Markman* hearing that the '651 Patent "discusses in – at length the robotic search engine problem" with the prior art). Properly quoted and taken in context, KlausTech's statements at the claim construction hearing do not contradict its patentability arguments to the Court and do not undermine the Court's § 101 Decision. In the context of arguing against Google's attempt to import certain HTML limitations from the specification into claims 20 and 25, KlausTech argued that dependent claim 22, rather than independent claims 20 or 25, claims the solution to the robotic search engine indexing problem. Ex. B at 84:10-13, 85:17-18. There is nothing inaccurate or contradictory about KlausTech's statements; nor does the fact that an invention is directed to multiple technological advancements justify importing all the limitations or embodiments described in the specification into all the claims. *See E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364, 1370 (Fed. Cir. 2003).

4

**B.      Legal Standard**

In the Ninth Circuit, collateral estoppel or issue preclusion attaches where "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding." *See, e.g.*, *Paulo v. Holder*, 669 F.3d 911, 917 (9th Cir. 2011); *see also Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt, LLC*, 778 F.3d 1311, 1314 (Fed. Cir. 2015).

**C.      The Elements of Collateral Estoppel Are Satisfied Here.**

First, the patent eligible issue in *KlausTech I* and this action are identical. The same patent is in dispute: the '651 Patent. The claims currently asserted in this action—claims 20 and 25—were also asserted in *KlausTech I*. Google's prior and current Rule 12(c) motions raise the same legal question: whether Google is entitled to judgment on the pleadings of invalidity under § 101 or whether claims 20 and 25 of the '651 Patent are patent eligible. This Court has already reviewed the asserted claims, analyzed those claims based on the Supreme Court's guidance in *Alice*, and determined that they are patent eligible. Google cannot contest that the issue was already litigated and resolved in *KlausTech I*, and any purported new arguments in support of the issue of patent eligibility do not change the analysis or the outcome here. *See e.g.*, *XpertUniverse, Inc. v. Cisco Sys., Inc.*, 2018 WL 2585436, at *3 (N.D. Cal. May 8, 2018).

Second, the Court's § 101 Decision is final for purposes of applying issue preclusion. *Luben Indus., Inc. v. United States*, 707 F.2d 1037, 1040 (9th Cir. 2006) (A "final judgment" for purposes of issue preclusion includes "any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect."); *see also* Restatement (Second) of Judgments § 13 (1982)); *Syverson v. Int'l Bus. Machines Corp.*, 472 F.3d 1072, 1079 (9th Cir. 2007) (not same as finality threshold required for appeal). The applicable factors for determining whether a prior adjudication is "sufficiently firm" support the finality and preclusive effect of the Court's § 101 Decision. *See Luben Indus.*, 707 F.2d at 1040; *see also* Restatement (Second) of Judgments § 13, comment g (1982)). This Court's decision was **not** tentative in any aspect.

5

AdMob/Google was represented by competent counsel and had a full opportunity to brief the issue. The Court issued a well-reasoned opinion in support of its decision, conducting the appropriate analysis and articulating the basis for its ruling. That is enough, even if the decision was not appealable, where, as here, the other factors all weigh in favor of collateral estoppel. *See UCP Int'l Co. Ltd. v. Balsam Brands Inc.*, 2017 WL 5068568, at *4 (N.D. Cal. Nov. 3, 2017) (finding prior decision sufficiently firm because lack of appealability "is not sufficient to counterbalance the [other] factors that all weigh in favor of collateral estoppel"), rev'd on other grounds 787 Fed. App'x 691, 702 (Fed. Cir. 2019). Further, denial of a Federal Rule 12 motion can be sufficiently "final" such that it has preclusive effect. *See, e.g.*, *Gilldorn Sav. Assoc. v. Commerce Sav. Assoc*, 804 F.2d 390, 395 (7th Cir. 1986); *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991)); Restatement (Second) of Judgments § 27 cmt. d (reflecting that an issue can be resolved for collateral estoppel purposes even where it was decided as part of a denial of a dispositive motion or an interlocutory order.). *Cf. Pellerin v. Nevada Cty.*, 635 Fed. App'x 345, 347 (9th Cir. 2015) (applying Nevada state law) (holding that a state law motion to dismiss may be "sufficiently firm and on the merits so as to be accorded conclusive effect"); *see also Garcia v. Prudential Ins. Co. of Am.*, 293 P.3d 869, 874 (2013) (Nevada follows the Restatement (Second) of Judgments).[2]

Third the party/privity requirement is met here. There is no dispute that Google was a named party in *KlausTech I*. Further, there is no dispute that Google was in privity with AdMob, Inc. As AdMob, Inc.'s successor-in-interest, Google is bound by the Court's § 101 Decision. *See Elan Microelectronics Corp. v. Apple, Inc.*, 2010 WL 4510909, at *3 (N.D. Cal. Nov. 1, 2010) (finding successor-in-interest in privity); *see also Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 179 (1973) ("Persons acquiring an interest in property that is a subject of litigation are bound by, or entitled to the benefit of, a subsequent judgement, despite a lack of knowledge."); *Kloster Speedsteel*

---

[2] *Voter Verified, Inc. v. Election Sys. & Software LLC*, holding that issue preclusion did not apply because, among other reasons, "the § 101 issue of invalidity was not necessary to the judgment in the first district court action" is inapplicable here because, unlike the Eleventh Circuit's test, the Ninth Circuit's test does not require that the issue in question be necessary to support the ultimate judgment. 887 F.3d 1376, 1383 (Fed. Cir. 2018) *XpertUniverse,* 2018 WL 2585436, at *4.

6

*AB v. Crucible Inc.*, 793 F2d 1565, 1583 (Fed. Cir. 1986) ("Courts have repeatedly found privity where, after a suit begins, a nonparty acquires assets of a defendant-infringer.") *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004); *Brunswick Corp. v. Chrysler Corp.*, 408 F.2d 335, 338 (7th Cir. 1969) (acquiring company was precluded from challenging validity after it bought all the assets of another company that was estopped); *Astrazeneca UK Ltd. v. Watson Labs., Inc. (NV)*, 905 F. Supp. 2d 596, 603 (D. Del. 2012).[3]

**D. There Is No Basis to Avoid Applying Collateral Estoppel Here.**

On rare occasions, courts will decline to apply collateral estoppel even though the requirements are satisfied. *See Durkin v. Shea & Gould*, 92 F.3d 1510, 1515 (9th Cir.1996); *see also* the Restatement (Second) of Judgments § 28 (1982). No such unusual circumstances are present here. Google had a full and fair opportunity to litigate whether it was entitled to judgment on the pleadings based on § 101, as a named defendant and based on its earlier acquisition of AdMob, Inc. *See Bingo Card Minder Corp. v. Power Bingo Corp.*, 1996 WL 711515, at *4 (N.D. Cal. Nov. 25, 1996). Google and AdMob, Inc. were represented by the same litigation counsel, who submitted thorough briefing. The Court did not refuse to consider Google's arguments or commit any procedural breach. Google's disagreement with this Court's decision is not a basis to avoid preclusion. *See Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.*, 170 F.3d 1373, 1380 (Fed. Cir. 1999). Google cannot show any change in the law, considering that the Federal Circuit has determined that even "*Alice* did not alter the governing law of Section 101." *Voter Verified*, 887 F.3d at 1382; *see also XpertUniverse*, 2018 WL 2585436, at *5 (setting forth three requirements for application of the change-in-law exception). Google's Rule 12(c) and § 101 burdens are the same now as they were in *KlausTech I*. *See, e.g.*, *Cisco Sys., Inc. v. Capella Photonics, Inc.*, 2020 WL 4923697, at *5 (N.D. Cal. Aug. 21, 2020).

[3] Google cannot attempt to avoid a finding of privity based on arguing that *KlausTech I* and this action involve different accused products because any relevance of that distinction arises only regarding preclusion for infringement, not regarding preclusion for validity.

Any suggestion by Google that KlausTech's purportedly contradictory litigation positions constitute such a "special circumstance" should be flatly rejected. First, Google made the strategic decision not to seek reconsideration of the Court's § 101 Decision anytime between the *Markman* hearing in April 2016 and the judgment of non-infringement in January 2019 (although KlausTech contends any such motion should have been denied on the merits). There is no injustice in precluding Google from now reasserting the same motion. *See XpertUniverse*, 2018 WL 2585436, at *6. Second, as set forth above, KlausTech did not take shifting litigation positions in *KlausTech I*, nor did it mislead the Court, as demonstrated above. Moreover, substantial precedent confirms that the *Alice* step one determining of what a claim is "directed to" begins with looking at the "claimed advance" as described in the specification as well as the asserted claims. *See, e.g.*, *Ancora Techs, Inc. v. HTC America, Inc.*, 908 F.3d 1343, 1347 (Fed. Cir. 2018); *Affinity Labs of Texas, LLC v. DirecTV, LLC*, 838 F.3d 1253, 1257-58 (Fed. Cir. 2016); *see also Chargepoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 767 (Fed. Cir. 2019). Ultimately, the Court correctly determined that claims 20 and 25 (as well as claims 21, 23, 24, 26, 28, and 29) are patent eligible under § 101 such that Google is not entitled to judgment on the pleadings, and Google is now collaterally estopped from relitigating that issue. Its Motion should be denied.

## II.    THE '651 PATENT CLAIMS ARE PATENT ELIGIBLE UNDER § 101

Even if Google could relitigate validity under § 101, it fares no better on this second try. The facts are all the same, and the further development of § 101 law now more strongly supports the patent eligibility of the '651 Patent claims. Google's Motion should be denied, again, for all the reasons set forth below, demonstrated by KlausTech (*see* D.I. 29-4, which is incorporated in its entirety herein by reference), and found by this Court (D.I. 29-5).

### A.    Applicable Law

Despite more than five years of additional § 101 caselaw, this Court's prior recitation of the framework for determining patent eligibility under § 101 is still correct. *See* D.I. 29-5 at 3 (citing *Alice*; *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 75-77 (2012)). At *Alice*

step one, the Court must determine whether the claims are directed to an abstract idea. *Alice*, 573 U.S. at 217. *See also Enfish, L.L.C. v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (directing that the claims are "considered in light of the specification"); *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1375 (Fed. Cir. 2016) (at *Alice* step one the court considers any advances or advantages over the prior art). Only if the claim is drawn to an abstract idea does the court move to *Alice* step two, pursuant to which the court must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application," or whether the claims contain an "inventive concept." *Alice*, 573 U.S. at 217.

### B.    Background of the Patent

The detailed discussion of the '651 Patent set forth in KlausTech's prior opposition brief (D.I. 29-4 at 4-6), which is incorporated herein, demonstrates at least that:

The '651 Patent teaches and claims a novel centrally-controlled scrolling advertising display on an Internet browser. The '651 Patent specification describes how conventional Internet advertising worked in the late 1990s and various problems and shortcoming associated with the design of those systems, including the robotic search engine problem and the lack of advertiser knowledge and control problem. *See* D.I. 29-3 at 1:12-2:19. These problems are inherently technical and did not exist in and cannot be analogized to the traditional advertisement context (*see id.*; *see also* D.I. 29-4 at 14-17 citing D.I. 29-2 at 2:22-25, 32-49, D.I. 29-3 at Abstract, 2:20-67, 3:49-51, 54-67, 3:1-15; 3:48-61, Ex. C at 3). *See also DDR Holdings, L.L.C. v. Hotels.com, L.P.*, 773 F.3d 1245, 1258 (Fed. Cir. 2014) (unlike physical stores, Internet websites have to deal with "the ephemeral nature of an Internet 'location' [and] the near-instantaneous transport between these locations made possible by standard Internet communication protocols, which introduces a problem that does not arise in the 'brick and mortar' contexts."). Accordingly, the Court correctly found that the Internet-related advertising "had technical problems that do not exist in the conventional advertising realm." D.I. 29-5 at 5.

The '651 Patent specification further explains that the invention improves conventional Internet advertising systems via the unconventional use of a central controller, browser, non-scrolling ad frame, and real time reporting. D.I. 29-4 at 5-9. Specifically, unlike conventional Internet advertising systems in which "only the website controls the ad content", the invention "uses the website minimally in its scheme of precise timed ad display control." *Id.* at 3:44-45. Instead, the claimed system uses the browser and a central controller to control the delivery and display of the ad content in a non-scrolling ad frame. *See* D.I. 29-3 at 6-7, 14-15 (and '651 Patent citations therein). Additionally, through the use of the non-scrolling ad frame, the browser, and the central controller, and the interaction between those components as taught in the '651 Patent (D.I. 29-4 at 6-9), the claimed system provides real time communication between the central controller and the browser to keep track of which advertisements are displayed at which browser for a minimum amount of time, thereby improving the tracking and control of the advertisement display. *Id.* at 2:32-35, 46-49, 3:49-51; D.I. 296-3 at 2:46-49. The central controller includes a database that provides an audit trail from which the website can be compensated for ad display and advertisers billed for the ad display (D.I. 29-3 Abstract), thereby enabling "precision targeted advertising with accountability to the website and proof of advertisement to the paying advertiser." *Id*. at 3:49-51. Accordingly, as this Court correctly held, the '651 Patent's technical solutions solve the technical problems associated with the control and knowledge problems of conventional Internet advertising systems. *See* D.I. 29-5 at 5.[4]

The '651 Patent also improves upon conventional Internet advertising systems by solving the search engine indexing problem for websites with non-scrolling frames by removing the non-scrolling frame from the website altogether. See D.I. 29-3 at 2:54-67, 3:31-23. Unlike the conventional systems that came before the '651 Patent in which the non-scrolling frame was included in the website itself, in the patented system the non-scrolling frame appears in the browser

---

[4] The '651 Patent also improved on, and was distinguished from, the nearest prior art system by teaching a uses the central controller and a browser to transmit an Internet address for new ad content "in response to receipt of the timer timeout report at the central controller." D.I. 29-3 Abstract; D.I. 29-2 at 2:46-49; Ex. C at 3.

and is visible to the user, but is never part of the website. D.I. 29-3 at 2:60-64. ("It is important to note that the non-scrolling frame never appears at the website; the non-scrolling frame only appears at the browser. This being the case, search engines servicing general search sites are free to come, analyze, and index the contents of the website.") The patented system allows non-scrolling frames to be used to display advertisements without preventing associated websites from being indexed by search engines. *Id.* at 2:64-67 ("Since the non-scrolling frame only appears at the browser—and never at the website—the robotic search engines are neither trapped recursively within the site nor avoid the site because of the presence of a frame."). A browser receiving a non-scrolling frame from a central controller (as opposed to the conventional practice of including the non-scrolling frame in a website) is one example of how the patented system "uniquely uses the browser in a scheme of precise timed ad display control." D.I. 29-3 at 3:26-32; *see also* D.I. 29-5 at 5 (finding this teaching an "apparent uniqueness" of the invention).

## C. *Alice* Step One: The '651 Patent Claims Are Patent Eligible

### 1. The Claims Are Directed to Specific Technical Improvements to Technological Problems Unique to Internet Advertising

In analyzing the claims, this Court properly looked to "whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies [as] an abstract idea for which computer are invoked merely as a tool." *Uniloc USA, Inc. v. LG Elec. USA, Inc.*, 957 F.3d 1303, 1306-07 (2020). It further concluded that the claims are not directed to an abstract idea because they "do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." D.I. 29-5 at 5-6 (citing *DDR*, 773 F3d at 1257). That conclusion is correct and should stand.

The claimed advance of the '651 Patent is best described as improving control and monitoring of the display of advertisements on Internet browsers by use of a central controller to control and record non-scrolling, timed ad display on Internet browsers. An additional claimed

11

advance is allowing non-scrolling frames to be used to display advertisements without preventing associated websites from being indexed by search engines. This description of the claimed advance is supported by the '651 Patent on its face, including the language of the claims and explicit statements in the specification. The claimed advance is thus directed to improving computer-related functionality. Since this Court issued its § 101 Decision, the Federal Circuit has routinely held that claims satisfy *Alice* step one when they are directed to improvements in computer-related functionality. *See, e.g.*, *Uniloc*, at 1307-1309 (finding claims patent eligible where directed to changing the normal operation of the communication system to "overcome a problem specifically arising in the realm of computer network," *i.e.*, computer latency periods); *see also id.* at 1307 (discussing seven other cases, including *DDR*, finding claims patent eligible at *Alice* step where the claims were directed to improvements in "computer technology," "computer networks," "the way computers operated and handled data," "computer capabilities," "computer security," "computer functionality"). The specific technical improvements provided by the '651 Patent claims are at least as technically-directed as the improvements in those cases. *See id.*; *see also* D.I. 29-4 at 4-5, 12-14.

## 2. The Claims Are Not Directed to An Abstract Idea

Google's attempt to analogize the claimed invention to the longstanding practice of print advertising reflects the degree to which Google has oversimplified the claims. For all the reasons set forth in KlausTech's prior opposition (D.I. 29-4 at 4-11, 16-17[5]) and above, the '651 Patent claims are not directed to some pre-Internet advertising or other business activity. As this Court correctly held, the claimed solution is necessarily rooted in computer technology in order to overcome a problem arising in computer-related technology. D.I. 29-5 at 5-6 (citing *DDR*, 773 F.3d at 1257). Absent the type of excessive abstraction the Federal Circuit has cautioned against (*see Enfish*, 822 F.3d at 1337), the '651 Patent claims do not resemble the claims in cases the Federal Circuit typically finds directed to an abstract idea because they were (1) directed to using computer technology to

---

[5] The chart included in Google's motion is a slightly edited version of the chart it attached as an exhibit to its prior motion. *See* D.I. 29-4 at 17 n.5 Neither the original nor the revised content refute the fact that there is no analog between the '651 Patent and the "brick and mortar" world. *See* D.I. 29-5 at 5; Ex. C at 3.

automate a process formerly carried out without a computer (*buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("creating a contractual relationship")); (2) directed to selecting, analyzing, reporting or displaying information (*see, e.g. Intellectual Ventures I LLC v. Capital One Bank*, 792 F.3d at 1363, 1367 (Fed. Cir. 2015) ("tracking financial transaction to determine when they exceed a pre-set spending limit"); *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017) ("collecting, displaying, and manipulating XML data"); *Elec. Pwr Grp., LLC v. Alstrom S.A.*, 830 F.3d 1350, 1353-52 (Fed. Cir. 2016) ("collecting information, analyzing it, and displaying certain results"); *Trading Techs. Int' Inc. v. IBG LLC*, 921 F.3d 1084 (Fed. Cir. 2019) ("graphing (or displaying) bids and offers to assist a trader to make an order"); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017)); or (3) directed to a "mental process" (*see Synopsis, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1147-49 (Fed. Cir. 2016)). None of these cases support finding the '651 Patent claims patent ineligible.

Google attempts to characterize the invention as consisting only of "generic" or "conventional" features is wrong. Google's reliance on this Court's Claim Construction Order is misplaced because that Order does not hold or otherwise suggest that the asserted claims are directed to or recite only generic, conventional features or steps of a process. D.I. 29 at 6; *see* D.I. 29-9. Whether the '651 Patent employs conventional components is not determinative where, as here, the '651 Patent on its face describes a specific, nonconventional way to use those components to solve technological problems unique to advertising on the Internet.

### 3. None of the New Cases Cited by Google Support Reversing this Court's Prior Decision

Other than use of the word advertising, the '651 Patent claims are nothing like the claims found ineligible in the cases cited by Google. D.I. 29 at 7. As the Federal Circuit described, the claims in *Morsa* and *Bridge & Point* were directed to tailoring or customizing information based on specific data, which the Federal Circuit has concluded are directed to abstract ideas. *See In re Morsa*, 809 F. App'x 913, 917 (Fed. Cir. 2020); *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 887 (Fed. Cir. 2019). Likewise, in *Customedia*, the Federal Circuit described that "the

13

only improvements identified in the specification are generic speed and efficiency improvements inherent in applying the use of a computer to any task" and thus those claims were directed to "the abstract ideas of delivering targeted advertising." *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020) (holding that claims reciting reserving memory to ensure storage space is available for at least some advertising data are ineligible). *See also Ultramerical, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014) (finding claims directed to the "showing an advertisement before delivering free content," where, unlike here, there was no argument or basis to conclude that the claims advanced a technical improvement to a technological process). The '651 Patent invention, on the other hand, changes the normal operation of the prior Internet advertising systems to overcome a technical problem specifically arising in the realm of advertising on the Internet. In doing so, the '651 Patent claims provide the ability to control and monitor the delivery and display of non-scrolling, timed ads on Internet browsers and solves other technical problems unique to Internet advertising systems. *See Uniloc*, 957 F.3d at 1307-08 (finding similar claims eligible). The '651 Patent claims do not merely recite improved control or monitoring, but instead focus on and recite a "specific means or method" to accomplish that desired result. *See Secured Mail Sol. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 909 (Fed. Cir. 2017) (describing that, under *Alice* step one, the court "look[s] to whether the claims focus on a specific means or method); *Finjan, Inc. v. Blue Coat Sys., Inc*., 879 F.3d 1089, 1305 (Fed. Cir. 2016) (holding that "the claims recite more than a mere result. Instead, they recite specific steps . . . that accomplish the desired result"). The '651 Patent claims are thus patent eligible under *Alice* step one.

### D. *Alice* Step Two: The Claims Recite a Patent Eligible Application of Any Purportedly Abstract Idea

Although the Court need not reach *Alice* step two if it again finds (as it should) step one satisfied, the '651 Patent claims also satisfy step two. As set forth above, the '651 Patent describes how its particular arrangement and use of particular elements in an unconventional manner results in technical improvement to technological problems in the prior art Internet advertising systems. All of the '651 Patent claims, which recite a specific inventive "non-scrolling ad display from a website

14

for causing a browser hitting website to undertake a centrally controlled and recorded ad display for guaranteed minimum time intervals," thereby capture the specific means of improving advertiser control and monitoring. D.I. 29-2 at 2:22-25 (claim 20 preamble). The '651 Patent's specific solution to the robotic search engine indexing problem is also captured in the claims, although KlausTech points to claim 22 while Google contends must be embodied in claim 20. Construed in KlausTech's favor as they must be at this stage, the claims of the '651 Patent satisfy *Alice* step two. *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349-52 (Fed. Cir. 2016); *see also* D.I. 29-4 at 18-21 (citations therein).

Contrary to Google's incorrect argument, *Morsa* does not stand for the proposition that claims directed to improving an existing technological process in the technical field of advertising over the Internet/computer networks necessarily lack an inventive concept under *Alice* step two. *See* D.I. 29 at 7. In *Morsa*, the Federal Circuit held the claims did not recite an "inventive" concept because (1) the patent holder "simply restate[d] the claim limitations and assert[d] that the claims are directed to a technological improvement;" (2) "the claim language recite[d] targeted advertising and bidding for displaying advertisements implemented using generic computer components;" and (3) the Federal Circuit previously held claims similarly directed to targeting advertising "do not transform the abstract idea into a patent-eligible invention." 809 Fed. App'x at 917-918. By contrast, the '651 Patent on its face describes that the claims are directed to a technological improvement, not targeted advertising, and uses the claimed components in a nonconventional way that changes the way in which prior art Internet advertising systems operate. Accordingly, this Court correctly ruled in its prior § 101 Decision that '651 Patent "claims teach an improvement in a technology or technological field" that "transform[] the Internet-related advertising process into an inventive application of an abstract idea" such that they are patent eligible. D.I. 29-5 at 6.

## CONCLUSION

For all the foregoing reasons set forth herein and in KlausTech's prior opposition (D.I. 29-4), KlausTech requests that the Court again deny Google's Motion.

15

DATED: October 22, 2020

DINOVO PRICE LLP


By:   /s/ Nicole E. Glauser
      Nicole E. Glauser

Attorneys for Plaintiff
KLAUSTECH LLC

16

## CERTIFICATE OF SERVICE

I certify that on the 22nd day of October 2020, a true and correct copy of the foregoing document was served *via the Court's ECF System* on counsel of record in this case.

*/s/ Nicole E. Glauser*
W. Nicole E. Glauser