1   ROBERT W. UNIKEL (*pro hac vice*)
    robertunikel@paulhastings.com
2   JOHN A. COTIGUALA (*pro hac vice*)
    johncotiguala@paulhastings.com
3   PAUL HASTINGS LLP
    71 S. Wacker Dr. 45th Fl.
4   Chicago, Illinois  60606
    Telephone:  1(312) 499-6000
5   Facsimile:  1(312) 499-6100

6   CHRISTOPHER W. KENNERLY (SB# 255932)
    chriskennerly@paulhastings.com
7   JOSHUA YIN (SB# 280891)
    joshuayin@paulhastings.com
8   PAUL HASTINGS LLP
    1117 S. California Ave.
9   Palo Alto, California  94304-1106
    Telephone:  1(650) 320-1800
10  Facsimile:  1(650) 320-1900

11  ROBERT R. LAURENZI (*pro hac vice* application forthcoming)
    robertlaurenzi@paulhastings.com
12  PAUL HASTINGS LLP
    200 Park Ave.
13  New York, New York  10166
    Telephone:  1(212) 318-6000
14  Facsimile:  1(212) 319-4090

15  GRANT N. MARGESON (SB# 299308)
    grantmargeson@paulhastings.com
16  PAUL HASTINGS LLP
    101 California St. 48th Fl.
17  San Francisco, California  94111
    Telephone:  1(415) 856-7000
18  Facsimile:  1(415) 856-7100

19  Attorneys for Defendant
    Google LLC

20                  UNITED STATES DISTRICT COURT
21                 NORTHERN DISTRICT OF CALIFORNIA
                          OAKLAND DIVISION
22

| | |
|---|---|
| 23  KlausTech LLC, | CASE NO. 4:20-cv-04459-JSW |
| 24          Plaintiff, | **DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS OF INVALIDITY OF U.S. PATENT NO. 6,128,651** |
| 25     vs. | |
| 26  Google LLC, | |
| 27          Defendant. | Date:     January 8, 2021 |
| 28 | Time:     9:00 a.m. |
| | Place:    Courtroom 5, 2nd Floor |
| | Judge:    The Hon. Jeffrey S. White |

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ........................................................................................................... 1

II.     DURING THE PRIOR LITIGATION, KLAUSTECH ADMITTED THAT THE
        ASSERTED '651 PATENT CLAIMS DO NOT ADDRESS AN INTERNET-
        SPECIFIC PROBLEM AND DISCLAIMED THE BASIS OF THE COURT'S
        PRIOR SECTION 101 RULING ................................................................................... 2

III.    THE COURT SHOULD DECIDE GOOGLE'S MOTION ON THE MERITS ............... 3

        A.      Patent Eligibility Was Not "Necessarily Decided" in *KlausTech I*,
                Precluding Application of Collateral Estoppel ....................................... 4

        B.      KlausTech's Shifting and Contradictory Positions Mean the Issues Are Not
                "Identical," Further Precluding Application of Collateral Estoppel ...................... 7

        C.      The Court Has "Broad Discretion" to Decide Google's Motion on the
                Merits .................................................................................................. 7

IV.     THE ASSERTED CLAIMS ARE NOT PATENT ELIGIBLE ......................................... 9

        A.      *Alice* Step One: KlausTech Fails to Identify Any Technical Improvement
                or Non-Abstract Idea in Claim 20 ............................................................ 9

        B.      *Alice* Step Two: KlausTech Fails to Identify Any Inventive Concept
                Sufficient to Make the Claims Patent-Eligible ................................... 12

V.      CONCLUSION .......................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alberto-Culver Co. v. Trevive, Inc.*,
199 F. Supp. 2d 1004 (C.D. Cal. 2002).....................................................................................7

*Alice Corp. Pty. v. CLS Bank Int'l*,
573 U.S. 208 (2014) ............................................................................................... *passim*

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016)...............................................................................13

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*,
778 F. App'x 882 (Fed. Cir. 2019) ...............................................................9, 10, 12

*Cave Consulting Grp., Inc. v. OptumInsight, Inc.*,
No. 15-cv-03424-JCS, 2016 U.S. Dist. LEXIS 54367
(N.D. Cal. Apr. 22, 2016)............................................................................... *passim*

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019)..................................................................8, 10, 13

*Cisco Sys., Inc. v. Uniloc 2017 LLC*,
813 F. App'x 495 (Fed. Cir. 2020) ....................................................................11

*Comair Rotron, Inc. v. Nippon Densan Corp.*,
49 F.3d 1535 (Fed. Cir. 1995)..............................................................................6

*CSX Transp., Inc. v. Bhd. of Maint. of Way Emples.*,
327 F.3d 1309 (11th Cir. 2003)............................................................................6

*Customedia Techs., LLC v. Dish Network Corp.*,
951 F.3d 1359 (Fed. Cir. 2020)...........................................................8, 11, 12, 13

*DDR Holdings, LLC v. Hotels.com, L.P.*,
773 F.3d 1245 (Fed. Cir. 2014)..........................................................................11

*Droplets, Inc. v. Yahoo! Inc.*,
No. 12-cv-03733-JST, 2019 U.S. Dist. LEXIS 197730
(N.D. Cal. Oct. 15, 2019) ............................................................................6, 7, 8

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016).............................................................................9

*FTC v. Nat'l Urological Grp., Inc.*,
785 F.3d 477 (11th Cir. 2015)...............................................................................7

GOOGLE'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS OF INVALIDITY

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Hill-Rom Co. v. Kinetic Concepts, Inc.*,
    209 F.3d 1337 (Fed. Cir. 2000)..........................................................................................4

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015)................................................................................11, 13

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015)..........................................................................................8

*KlausTech, Inc. v. Google LLC*,
    No. 4:10-cv-05899-JSW (N.D. Cal.) ..................................................................... *passim*

*In re Morsa*,
    809 F. App'x 913 (Fed. Cir. 2020) ...................................................................11, 13

*Open Text S.A. v. Box, Inc.*,
    78 F. Supp. 3d 1043 (N.D. Cal. 2015) ...........................................................................11

*Paulo v. Holder*,
    669 F.3d 911 (9th Cir. 2011).............................................................................................3

*Rembrandt Soc. Media, LP v. Facebook, Inc.*,
    640 F. App'x 943 (Fed. Cir. 2016) .................................................................................5

*Roche Palo Alto LLC v. Apotex, Inc.*,
    526 F. Supp. 2d 985 (N.D. Cal. 2007) .........................................................................6, 7

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt, LLC*,
    778 F.3d 1311 (Fed. Cir. 2015).........................................................................................3

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138 (Fed. Cir. 2016)...................................................................................8, 10

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014).........................................................................................12

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
    957 F.3d 1303 (Fed. Cir. 2020)......................................................................................11

*Voter Verified, Inc. v. Election Sys. & Software LLC*,
    887 F.3d 1376 (Fed. Cir. 2018).....................................................................................5, 7

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
    No. 17-CV-03848-RS, 2018 WL 2585436 (N.D. Cal. May 8, 2018)................................6, 11

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

**Statutes**

4

35 U.S.C. § 101 ........................................................................................................ *passim*

5

**Other Authorities**

6

18 Moore's Federal Practice - Civil § 132.03 (2020) ........................................................6

7

U.S. Patent No. 6,128,651 ......................................................................................... *passim*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOOGLE'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS OF INVALIDITY

**SUMMARY OF THE ARGUMENT**

KlausTech LLC ("KlausTech") raises a hodge-podge of meritless arguments in an attempt to avoid a patent eligibility analysis of its asserted patent claims. As an initial matter, KlausTech asks that this Court *not* consider Google's motion on the basis of collateral estoppel in light of the Court's 2015 ruling in *KlausTech, Inc. v. Google LLC*, No. 4:10-cv-05899-JSW (N.D. Cal.) ("*KlausTech I*"). That request disregards this Court's previous rejection of an identical proposed application of collateral estoppel based on an earlier validity ruling where, as here, the final judgment in the earlier case was based solely on *noninfringement*. *Cave Consulting Grp., Inc. v. OptumInsight, Inc.*, No. 15-cv-03424-JCS, 2016 U.S. Dist. LEXIS 54367 (N.D. Cal. Apr. 22, 2016). Further, the patentability issue here is not "identical" to that in *KlausTech I* because subsequent to the Court's 2015 ruling (a) KlausTech disavowed its representations, relied on by the Court, as to the asserted claims' alleged inventive concept, and (b) the Court construed the claims, establishing that no unconventional hardware or programming is required. Accordingly, collateral estoppel does not apply.

Next, KlausTech relies on attorney proclamations, specification statements, and unclaimed embodiments to suggest an unconventional, "Internet-specific" focus of the asserted claims. But KlausTech's conclusory assertions fall flat because they fail to map to any actual claim limitations. The Section 101 inquiry necessarily must focus on the asserted claims themselves. *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016). KlausTech makes no attempt to contest Google's demonstration—based on an element-by-element comparison of representative Claim 20 to a conventional, timed newspaper advertising example—that the claims cover little more than the abstract idea of displaying advertisements in a fixed location for a defined period of time. Mere use of conventional computer and Internet components to apply that abstract idea to websites, rather than newspapers, does not make the claims patent eligible under Section 101. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014); *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 886 (Fed. Cir. 2019); *Open Text S.A. v. Box, Inc*., 78 F. Supp. 3d 1043, 1047 (N.D. Cal. 2015).

1

## I.    **INTRODUCTION**

2        KlausTech does not want the Court to reevaluate whether the '651 Patent claims patentable

3 subject matter under 35 U.S.C. § 101. But KlausTech's own admissions and changed positions

4 during the prior litigation make clear that the '651 Patent claims are not directed to any concrete,

5 non-abstract idea and are therefore invalid.

6        KlausTech spends the vast majority of its opposition urging the Court not to consider the

7 Section 101 patentability issue due to alleged collateral estoppel, but fails to acknowledge that (a)

8 because the 2019 final judgment in *KlausTech I* was based on the parties' agreed stipulation that

9 Google *did not infringe* the '651 Patent, the Court's 2015 *patentability* ruling was not "necessary

10 to the judgment," which precludes the application of collateral estoppel; (b) the Court based its

11 2015 ruling on representations made by KlausTech that later proved to be not only factually

12 incorrect, but also contrary to KlausTech's later admissions concerning the claimed invention's

13 nature and scope, rendering inappropriate the application of collateral estoppel; (c) the stipulation

14 on which the noninfringement judgment was premised expressly preserved Google's invalidity

15 arguments, such that Google's invalidity defenses were dismissed *without prejudice*, Ex. 10 at 9;[1]

16 and (d) the framework and principles for patent eligibility analysis under Section 101 have been

17 materially clarified since the Court's 2015 ruling, such that patentability of the subject matter

18 claimed by the '651 Patent should now be reevaluated.

19        When finally addressing the substance of Google's Section 101 challenge, KlausTech fails

20 to identify any claim limitations that support its characterization of the invention as addressing an

21 "Internet-specific problem." Beyond making conclusory assertions concerning the '651 Patent's

22 scope premised solely on statements in the '651 Patent's *specification*, KlausTech fails to materially

23 dispute Google's analysis that the actual '651 Patent *claim elements* are directed to little more than

24 the basic idea of displaying advertisements in a fixed location for a defined period of time—an idea

25 long practiced in non-Internet contexts such as newspapers. Merely reciting that an age-old

26

27

28

---

[1] All references to numbered exhibits are to exhibits attached to the Declaration of Robert Unikel (Exs. 1-9 attached to the Declaration filed with Google's motion (Dkt. 29-1) and Ex. 10 to the Declaration filed concurrently herewith). References to lettered exhibits are to those attached to the Declaration of Nicole Glauser, filed in support of KlausTech's opposition (Dkt. 34-1).

advertising practice is executed in connection with websites (rather than newspaper pages) does not, and cannot, make the '651 Patent claims patent-eligible under Section 101.

## II. DURING THE PRIOR LITIGATION, KLAUSTECH ADMITTED THAT THE ASSERTED '651 PATENT CLAIMS DO NOT ADDRESS AN INTERNET-SPECIFIC PROBLEM AND DISCLAIMED THE BASIS OF THE COURT'S PRIOR SECTION 101 RULING

In this case, just as in *KlausTech I*, KlausTech accuses Google of infringing Claims 20 and 25 of the '651 Patent. Opp. at 5. KlausTech does not contest that Claim 20 is representative. *See generally* Opp. KlausTech further does not dispute that in opposing Google's 2015 Section 101 motion in *KlausTech I*, KlausTech explicitly represented to the Court that *all* the '651 Patent claims, including Claim 20, solved the alleged robotic "search engine indexing problem" by providing a non-scrolling ad frame in a browser, rather than with a website. Opp. at 4.[2] KlausTech devoted an entire section of its 2015 Opposition to its argument based on this representation, Ex. 3 at 7-8 ("The '651 Patent Solves the Search Engine Indexing Problem . . ."),[3] and relied on the representation with respect to both *Alice* steps. *Id.* at 10, 12-14, 18; *see also id.* at 12-13 (arguing that "[r]obotic search engine indexing being unable to properly index a website that contains a non-scrolling frame is a technological problem, and a problem that only exists on the Internet" and that "the claims here cover a solution . . . namely, *the search engine indexing problem* for websites with non-scrolling frames") (emphasis added). KlausTech cannot now dispute that the Court's 2015 ruling relied on KlausTech's representation given the Court's statement that "[t]he apparent uniqueness of the invention is that the system allows the non-scrolling advertising frame to appear in the browser, but not to be itself part of the hosting website." Ex. 4 at 5.

But, after making its representations to defeat Google's Section 101 motion in *KlausTech I*, KlausTech reversed course during claim construction and disavowed that Claim 20 covers or even addresses the purported robotic search engine indexing solution. There is no ambiguity in KlausTech's admission during claim construction that Claim 20 "***does not claim the solution to the***

---

[2] "Opp." refers to KlausTech's Opposition (Dkt. 34), and "Mot." refers to Google's Motion for Judgment on the Pleadings of Invalidity of U.S. Patent No. 6,128,651 (Dkt. 29).
[3] KlausTech alternately refers to the same alleged problem as the "robotic search engine problem" or the "search engine indexing problem." *See* Ex. 3 at 18.

*robotic search engine problem.*" *See* Ex. 5 at 84:9-19 (emphasis added). As noted in Google's Motion, later in *KlausTech I*, KlausTech further disclaimed its initial representation that the claims addressed the robotic search engine indexing problem by having its invalidity expert put forth an entirely different alleged focus of the '651 Patent claims. In fact, its expert opined that the focus of the '651 Patent claims was *not* solving the robotic search engine indexing problem because solving that problem required "simply positing a non-scrolling frame," which the expert acknowledged to be conventional. Instead, KlausTech's expert opined that the claims' focus was to allow a publisher to "opt in" to Internet advertising. Ex. 6 ¶ 46. Ex. 5 at 84:9-19.

KlausTech's Opposition argues that its representation during the 2015 motion proceedings was irrelevant because it was attempting to characterize unasserted Claim 22, rather than asserted Claim 20. Opp. at 4. This is wrong and defies reason. KlausTech's 2015 briefing clearly represents that *all* the '651 Patent claims, including Claim 20, "Solve[] the Search Engine Indexing Problem." Ex. 3 at 7-8. Later, at claim construction, KlausTech stated that Claim 20 "*does **not** claim the solution to the robotic search engine problem.*" Ex. 5 at 84:9-19 (emphasis added). These two statements cannot be reconciled, and KlausTech's admission during *KlausTech I* that Claim 20 does not actually solve the robotic search engine indexing problem, as represented, undermines the foundation on which the Court's 2015 ruling was based. For this reason alone, collateral estoppel is inapplicable, and the Court should reevaluate the asserted claims' patent eligibility in light of KlausTech's own admissions regarding the asserted claims.

## III.    THE COURT SHOULD DECIDE GOOGLE'S MOTION ON THE MERITS

KlausTech spends most of its Opposition urging the Court to apply collateral estoppel, but even a cursory analysis demonstrates that the doctrine does not apply. KlausTech recognizes that collateral estoppel can only apply where an "issue *necessarily decided* at the previous proceeding *is identical to* the one which is sought to be relitigated." Opp. at 5 (emphasis added) (citing *Paulo v. Holder*, 669 F.3d 911, 917 (9th Cir. 2011), and *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt, LLC*, 778 F.3d 1311, 1314 (Fed. Cir. 2015)). But KlausTech ignores that the Court's 2015 ruling related to a patentability issue that was (a) not necessary for, or even related to, the express basis of the Court's final judgment of noninfringement, and (b) not identical to the one now

1   presented to the Court due, at least, to KlausTech's own admissions regarding the actual scope and

2   meaning of asserted Claims 20 and 25. Moreover, KlausTech ignores the Court's broad discretion

3   to examine the patent eligibility issue anew based on the totality of circumstances, including the

4   changes in KlausTech's positions in *KlausTech I*.

### A.   Patent Eligibility Was Not "Necessarily Decided" in *KlausTech I*, Precluding Application of Collateral Estoppel.

7   Collateral estoppel does not apply here at least because the issue of the '651 Patent's

8   patentability under Section 101 was not "necessarily decided" in connection with the final judgment

9   of noninfringement in *KlausTech I*. Critically, this Court already has made crystal clear in a

10  substantially similar case, *Cave Consulting Grp., Inc. v. OptumInsight, Inc.*, No. 15-cv-03424-JCS,

11  2016 U.S. Dist. LEXIS 54367 (N.D. Cal. Apr. 22, 2016), that collateral estoppel does *not* bar

12  consideration of patent invalidity in a later suit, where a validity ruling on the same patent in an

13  earlier suit between the same parties was not the basis for the final judgment in the earlier action.

14  In *Cave*, the Court ruled at summary judgment in the first case between the parties that the asserted

15  patent was not invalid, and the case proceeded to a jury verdict of noninfringement. *Id.* at *14. In a

16  subsequent, second case between the parties, the defendant reasserted the same invalidity argument,

17  and the plaintiff argued that defendant was precluded "based on its failure to successfully do so in

18  the *Cave I* litigation." *Id.* at *18. After pointing to an illustration in the Restatement (Second) of

19  Judgments as "directly on point," the Court explained that collateral estoppel did not apply:

> The Federal Circuit has similarly held in a case where it upheld a non-infringement verdict that "the district court's resolution of the issue of invalidity was not necessary to the judgment," and "[f]or that reason, the court's invalidity ruling will have no collateral estoppel effect in any possible future dispute between the parties."

23  *Id.* at *28-29 (citing *Hill-Rom Co. v. Kinetic Concepts, Inc.*, 209 F.3d 1337, 1344 (Fed. Cir. 2000)).

24  The Court thus declined to apply collateral estoppel, finding that the prior validity "determination

25  was not, however, necessary to the judgment, . . . because the jury determined that CCGroup did

26  not infringe" the patent. *Cave*, 2016 U.S. Dist. LEXIS 54367, at *28. The circumstances ruled on

27  by this Court in *Cave* are virtually identical to those now before the Court, such that KlausTech's

28  present assertion of collateral estoppel is a non-starter.

The Federal Circuit has similarly acknowledged and applied "the well-established rule of federal preclusion law that will deny issue-preclusive effect to the invalidity rulings because we leave them unreviewed as unnecessary to the judgment." *Rembrandt Soc. Media, LP v. Facebook, Inc.*, 640 F. App'x 943, 949 (Fed. Cir. 2016) (citations omitted). For example, in *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1379, 1383 (Fed. Cir. 2018), the Federal Circuit was presented with a situation where, in a first case, the district court held that an asserted patent was not infringed, and also was not invalid under Section 101. In a second case between the same parties, the defendant moved for summary judgment of invalidity under Section 101, and the plaintiff argued that collateral estoppel precluded relitigating the issue. *Id*. at 1380. The Federal Circuit, applying Eleventh Circuit law, held that *collateral estoppel did not apply*, in principal part, because the Section 101 issue was not "a critical and necessary part of the judgment[.]" *Id*. at 1382. The court explained that invalidity and noninfringement are "separate concepts" and "independent issues," either of which alone would be sufficient for final judgment in defendant's favor. *Id*. at 1383. Citing the same Restatement illustration noted by this Court in *Cave*, the Federal Circuit concluded that "it is clear that the § 101 issue was not critical or necessary to the final judgment." *Id*.

KlausTech's sole argument as to the "necessarily decided" requirement is its assertion that "unlike the Eleventh Circuit's test, the Ninth Circuit's test does not require that the issue in question be necessary to support the ultimate judgment." Opp. at 6 n.2. That assertion is wrong. As KlausTech separately admits in its Opposition, "*In the Ninth Circuit*, collateral estoppel or issue preclusion attaches where . . . the issue *necessarily decided* at the previous proceeding is identical to the one which is sought to be relitigated[.]" Opp. at 5 (citations omitted) (emphasis added). The "necessarily decided" requirement ensures that an issue was subject to truly final adjudication in a prior proceeding before collateral estoppel can apply: if an issue was not "necessary" to the final judgment in an earlier case, that issue was not fairly subject to a final determination (including by an appellate court). It is for precisely this reason that this Court, the Federal Circuit and other courts have made clear that an earlier *validity* ruling is not subject to collateral estoppel where the earlier final judgment is based on *noninfringement*, because the prior validity determination "was not . . .

1   necessary to the judgment." *Cave*, 2016 U.S. Dist. LEXIS 54367, at *28; *see also Roche Palo Alto*

2   *LLC v. Apotex, Inc.*, 526 F. Supp. 2d 985, 994 (N.D. Cal. 2007) (requiring that "the issue [was]

3   necessarily decided at the previous proceeding"); *CSX Transp., Inc. v. Bhd. of Maint. of Way*

4   *Emples.*, 327 F.3d 1309, 1317 (11th Cir. 2003) (requiring that the issue was "a critical and necessary

5   part of the judgment").[4]

6       Importantly, a contrary rule (as KlausTech urges, Opp. at 6 & n.2) would encourage the

7   proliferation of needless appeals, as prevailing noninfringers would be forced to appeal every

8   adverse ruling (particularly those related to validity) solely to keep those arguments alive for

9   potential future litigation. *See* 18 Moore's Federal Practice - Civil § 132.03 (2020) ("[A] winning

10  party may not appeal issues determined adversely to it by the trial court and, as a consequence, is

11  not barred from relitigating those issues."). This would undercut collateral estoppel's purpose "of

12  promoting judicial economy by preventing needless litigation." *Droplets, Inc. v. Yahoo! Inc.*, No.

13  12-cv-03733-JST, 2019 U.S. Dist. LEXIS 197730, at *6 (N.D. Cal. Oct. 15, 2019). *See also Comair*

14  *Rotron, Inc. v. Nippon Densan Corp.*, 49 F.3d 1535, 1538 (Fed. Cir. 1995) ("any encouragement

15  to litigants to appeal all peripheral findings for the sole purpose of avoiding the possible preclusive

16  effect as to any one unnecessarily increases the burdens of litigation on parties and courts.") (citing

17  Restatement (Second) of Judgments § 27, comment i (1982)).

18      Applying collateral estoppel would be particularly inappropriate here, as the parties

19  expressly stipulated in *KlausTech I* (a) that the judgment was limited to noninfringement, and (b)

20  that Google's invalidity arguments were preserved, such that Google's invalidity defenses were

21  dismissed *without prejudice*. Ex. 10 ¶¶ 7-11 & p. 9.

22

---

23  [4] As support for its argument, KlausTech's Opposition cites *XpertUniverse, Inc. v. Cisco Sys., Inc.*,
    No. 17-CV-03848-RS, 2018 WL 2585436 (N.D. Cal. May 8, 2018). In *XpertUniverse*, a jury in a

24  first case found the patent valid and infringed. *Id.* at *2. In a second case, when the defendant moved
    for summary judgment of invalidity under Section 101, plaintiff argued that collateral estoppel

25  precluded the defendant from raising new invalidity grounds, as the defendant had not asserted
    Section 101 invalidity in the earlier case. *Id* at *3. The central dispute in *XpertUniverse* was thus

26  "whether patent validity is a single issue, or whether each ground for asserting an invalidity
    defense—e.g. obviousness, preemption—is a separate issue." *Id.*  Here, unlike in *XpertUniverse*,

27  *KlausTech I* involved no jury verdict finding *both* patent validity and infringement; instead, there
    is only a Section 101 ruling based on KlausTech's representations concerning patent scope that it

28  later disavowed, which was not necessary to the Court's final judgment of noninfringement based
    on the parties' stipulation that Google could not, and did not, infringe. Ex. 10 ¶ 7.

GOOGLE'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS OF INVALIDITY

As established in *Cave* and *Voter Verified*, collateral estoppel does not, and cannot, bar Google from challenging the patent eligibility of the '651 Patent in this case.

### B.    KlausTech's Shifting and Contradictory Positions Mean the Issues Are Not "Identical," Further Precluding Application of Collateral Estoppel.

KlausTech's disavowal and disclaimer of its earlier-alleged basis for patent eligibility renders the present issue non-identical to the earlier issue and, as such, provides another reason application of collateral estoppel is inappropriate. Collateral estoppel requires that the prior issue be "identical" to the instant issue. *Roche Palo Alto*, 526 F. Supp. 2d at 994. "If different facts are in issue in a second case from those that were litigated in the first case, then the parties are not collaterally estopped" in the second case. *Alberto-Culver Co. v. Trevive, Inc.*, 199 F. Supp. 2d 1004, 1017 (C.D. Cal. 2002) (quoting *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1357 (9th Cir. 1985) (en banc)); *FTC v. Nat'l Urological Grp., Inc.*, 785 F.3d 477, 482 (11th Cir. 2015) ("To establish that an issue is not identical to one resolved in previous litigation, a party need only point to one material differentiating fact that would alter the legal inquiry.") (citations and quotation marks omitted).

Here, KlausTech's changed position following the Court's 2015 ruling, including its admission that Claim 20 "*does **not** claim the solution to the robotic search engine problem*" (Ex. 5 at 84:9-19 (emphasis added)), results in a material difference between the issue presented in 2015 and the issue presented in Google's Motion. This difference is enhanced by the fact that subsequent to the 2015 ruling, the Court construed the '651 Patent's asserted claims, and the constructions require no concrete or unconventional computer hardware, no specific or unusual algorithms, and no defined or unique programming. Ex. 8. The lack of identity between the earlier patentability motion and this one precludes application of collateral estoppel.

### C.    The Court Has "Broad Discretion" to Decide Google's Motion on the Merits.

Even if the Court could find that KlausTech has established the requirements for collateral estoppel (it has not), the Court nonetheless has broad discretion to refuse to apply the doctrine. *Droplets*, 2019 U.S. Dist. LEXIS 197730, at *7 (quoting *United States v. Geophysical Corp. of Alaska*, 732 F.2d 693, 697 (9th Cir. 1984)) ("[If] it is determined that the collateral estoppel bar is

1    available, the actual decision to apply the doctrine is left to the district court's discretion."). "The

2    Supreme Court's grant of 'broad discretion' to trial courts provides those courts the authority to

3    take potential shortcomings or indices of unfairness into account when considering whether to

4    apply . . . issue preclusion, even where the above-listed standard prerequisites are met." *Id.* (quoting

5    *Syverson v. IBM Corp.*, 472 F.3d 1072, 1078-79 (9th Cir. 2007)).

6         The Court should exercise its "broad discretion" to consider Google's present motion

7    because (a) the prior ruling was not necessary to the final judgment of noninfringement (and was

8    thus not part of the Federal Circuit appeal); (b) the parties' stipulation supporting the final judgment

9    explicitly stated that Google's invalidity arguments were preserved (such that Google's invalidity

10   defenses were dismissed *without prejudice*), Ex. 10 ¶¶ 7-11 & p. 9; (c) KlausTech admitted during

11   *KlausTech I* that the '651 Patent's asserted claims do not actually solve the robotic search engine

12   indexing problem as it previously represented, and on which the Court relied in issuing its earlier

13   Section 101 ruling; (d) after the prior Section 101 ruling, the Court construed the '651 Patent claims,

14   establishing that no unique hardware or specific and unconventional programming is required by

15   the claim elements; and (e) decisions issuing since the Court's prior ruling have materially clarified

16   patent eligibility analysis such that it is now abundantly clear the '651 Patent's asserted claims are

17   unpatentable under Section 101.

18        While there were only a limited number of Federal Circuit cases applying *Alice* in 2015,

19   that is no longer true in 2020. For example, the Federal Circuit recently decided *Customedia Techs.,*

20   *LLC v. Dish Network Corp.*, which explained that an improvement to targeted advertising "wherein

21   a computer is merely used as a tool" is "not an improvement in the functioning of the computer

22   itself" and hence is not patent eligible. 951 F.3d 1359, 1365 (Fed. Cir. 2020). Other Federal Circuit

23   decisions that issued since the Court's 2015 ruling further clarify and establish that it is the *claim*

24   *language,* as opposed to *specification statements*, that must be the focus of a patent eligibility

25   determination. *See, e.g., Synopsys*, 839 F.3d at 1149 ("The § 101 inquiry must focus on the language

26   of the Asserted Claims themselves."); *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769

27   (Fed. Cir. 2019) (citing *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed.

28   Cir. 2015)). This guidance is particularly relevant here given that KlausTech's Opposition focuses

almost exclusively on the thrust of the '651 Patent *specification*, rather than on any actual language or elements of the *asserted claims*. *See* Ex. 3 at 10, *and* Opp. at 2, 15.

Given the totality of circumstances, the Court should consider the merits of Google's motion and decline KlausTech's urging to pay no attention to the man behind the curtain.

## IV.  THE ASSERTED CLAIMS ARE NOT PATENT ELIGIBLE

### A.  *Alice* Step One: KlausTech Fails to Identify Any Technical Improvement or Non-Abstract Idea in Claim 20.

KlausTech's Opposition makes conclusory attorney arguments that the '651 Patent claims cover a technical improvement to computer-related functioning without ever identifying a single element of representative Claim 20 that actually captures such a concrete improvement. Opp. at 11-12. KlausTech does not cite Claim 20's limitations *even once* in its discussion of *Alice* Step One. *Id.* That alone should disqualify KlausTech's arguments. *Alice*, 573 U.S. at 217-18; *Bridge & Post*, 778 F. App'x at 886.

Nor does KlausTech's Opposition even attempt to rebut Google's element-by-element demonstration of the abstract and conventional nature of the asserted claims, as illustrated by comparison to a basic, timed newspaper advertising example. Mot. at 7-10.[5] And KlausTech does not meaningfully contest that the Court's constructions of the '651 Patent's claim terms require no unique computer hardware, unusual algorithms, or defined programming. Mot. at 14-15; Opp. at 13; Ex. 2 at Fig. 1 and 3:64-4:3.

While KlausTech attempts to revive its argument that Claim 20 is directed to solving the purported robotic search engine indexing problem—the same argument KlausTech relied on to survive Google's 2015 motion, Opp. at 11-12, KlausTech cannot escape from the dispositive facts that (a) it already admitted during claim construction in *KlausTech I* that Claim 20 "***does not claim***

---

[5] KlausTech's only response to the detailed newspaper analogy set forth in Google's motion is to suggest the specter of "excessive abstraction the Federal Circuit has cautioned against." Opp. at 12-13. But KlausTech fails to identify how Google's highly specific and detailed analogy constitutes "excessive abstraction." *Id.* While the *Enfish, LLC v. Microsoft Corp.* decision cited by KlausTech warns of abstraction "untethered from the language of the claims[,]" 822 F.3d 1327, 1337 (Fed. Cir. 2016), that criticism cannot fairly be leveled at Google's analogy, which shows, claim element-by-claim element, exactly how the claim language matches up to the conventional newspaper advertising example.

1    *the solution to the robotic search engine problem*," Ex. 5 at 84:9-19 (emphasis added); (b)

2    KlausTech's own expert in *KlausTech I* denigrated solving the "search engine indexing problem"

3    because "simply positing a non-scrolling frame" was conventional and well-understood at the time

4    of the invention, Ex. 6 ¶ 46; and (c) there is no element in Claim 20 that even suggests, let alone

5    specifies, that the "non-scrolling ad frame" be separated from the webpage, as KlausTech asserts

6    is necessary to solve the search engine indexing problem, Ex. 1 at 2:22-49. Instead, KlausTech

7    improperly attempts to rely on broad statements from the '651 Patent specification, and on the

8    elements of an unasserted claim (Claim 22), in order to lead the Court into wrongly accepting that

9    Claim 20 is somehow directed to solving an internet-specific problem. Opp. at 11-12, 14-15. But it

10   is well-established that "[t]he § 101 inquiry must focus on the language of the Asserted Claims

11   themselves." *Synopsys*, 839 F.3d at 1149. "[A]ny reliance on the specification in the § 101 analysis

12   must always yield to the claim language." *ChargePoint*, 920 F.3d at 769. "Even a specification full

13   of technical details about a physical invention may nonetheless conclude with claims that claim

14   nothing more than the broad law or abstract idea underlying the claims, thus preempting all use of

15   that law or idea." *Id*.

16         Apparently uneasy with its argument based on the robotic search engine indexing problem,

17   KlausTech's Opposition offers yet another alternative, and contradictory, description of the alleged

18   invention as "improving control and monitoring of the display of advertisements on Internet

19   browsers by use of a central controller to control and record non-scrolling, timed ad display on

20   Internet browsers." Opp. at 11. But this alternative description does not suggest a solution to an

21   Internet-specific problem either. Rather, it merely suggests implementing conventional "control,"

22   "monitoring," and "timing" aspects of timed advertising—aspects shown in Google's detailed

23   newspaper advertising example—in the Internet context using basic computer elements. Mot. at 7-

24   10. That is not patentable. *Bridge & Post*, 778 F. App'x at 886 (finding conventional

25   implementation of Internet components for advertising unpatentable). The mere fact that Claim 20

26   uses Internet-related terms, such as "webpage" and "central controller," to describe application of

27

28

the idea to websites rather than to newspapers, rotating billboards or television broadcasts does not render the claims patent eligible. *Alice*, 573 U.S. at 221; *Open Text*, 78 F. Supp. 3d at 1047.[6]

The Federal Circuit has emphasized that the inquiry for software patents "turns on whether the claims focus on specific asserted improvements in computer capabilities." *Cisco Sys., Inc. v. Uniloc 2017 LLC*, 813 F. App'x 495, 497 (Fed. Cir. 2020) (quoting *Uniloc*, 957 F.3d at 1307); *Customedia*, 951 F.3d at 1362-65 ("To be a patent-eligible improvement to computer functionality, we have required the claims to be directed to an improvement in the functionality of the computer or network platform itself.").[7] In *Cisco*, the court found claims directed to communications systems patent ineligible where they "broadly claim[ed] solving the problem of master stations potentially having inefficient antennas by choosing the station with the best antenna" but did "not specify any particular metric or method for ranking." *Cisco*, 813 F. App'x at 498. KlausTech's conclusory and unsupported assertions notwithstanding, Opp. at 11-12, there is not a single limitation in Claim 20 that specifies any unconventional or unique use of computers, the Internet, communication systems or timers to implement the abstract idea of showing timed advertisements in a fixed location on a website. Mot. at 7-10. The "entirety of the claim is simply the abstract idea and nothing more[.]" *Cisco*, 813 F. App'x at 498; *see also Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369-70 (Fed. Cir. 2015) (finding claims directed to "information tailoring" were drawn to an abstract idea because, in part, "newspaper inserts had often been tailored based on information known about the customer"); *In re Morsa,* 809 F. App'x 913, 917 (Fed. Cir. 2020) (finding claims "relating to customizing information based on the user and matching them to the advertiser" to be

---

[6] KlausTech cites *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1308-09 (Fed. Cir. 2020), to support its claim of patent eligibility. Opp. at 11-12. That case is inapposite because the claim at issue included specific limitations for a "change in the manner of transmitting data," providing "a specific asserted improvement to the functionality of the communication system itself." 957 F.3d 1303, 1308-09 (Fed. Cir. 2020). Here, by contrast, KlausTech does not contend that the functionality of the Internet, communication systems, or computers are improved by any specific limitations in Claim 20. Instead, KlausTech only asserts an alleged improvement in the effectiveness of advertising practices, using the Internet and computers in their conventional ways simply to execute that improvement. Opp. at 11-12. This is not a technical improvement analogous to the one found in the *Uniloc* case.

[7] For the same reason, *DDR Holdings* and its progeny are inapposite because they merely stand for the proposition that unconventional modifications of computer functions to solve a computer-specific problem *may* be patent eligible. *See, e.g.*, *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014). Claim 20 claims no such specific improvement.

directed to an abstract idea); *Bridge & Post,* 778 F. App'x at 887-88 (rejecting argument that asserted claims disclosed a technological solution to an Internet problem where "[t]he claim's recitation of additional generic network elements does not change its character as a whole"); *Ultramercial, Inc. v. Hulu, LLC,* 772 F.3d 709, 715 (Fed. Cir. 2014) (finding an "ordered combination of steps recites an abstraction" in the claimed "process of receiving copyrighted media, selecting an ad, offering the media in exchange for watching the selected ad, displaying the ad, allowing the consumer access to the media, and receiving payment from the sponsor of the ad[.]"); *Customedia,* 951 F.3d at 1365 (holding that reciting "generic speed and efficiency improvements" was "not an improvement in the functioning of the computer itself.").

> **B.    *Alice* <u>Step Two: KlausTech Fails to Identify Any Inventive Concept Sufficient to Make the Claims Patent-Eligible.</u>

KlausTech's argument on *Alice* Step Two fares no better. Opp. at 14-15. Again citing no claim language or limitations (aside from a cursory reference to Claim 20's preamble), KlausTech simply concludes that Claim 20 has a "particular arrangement and use of particular elements in an unconventional manner" such that there is a sufficient inventive concept. *Id*. But nowhere does KlausTech address Google's detailed analysis of how each "technical" limitation in the claim—a website at a webserver to transmit web pages, a web page with a non-scrolling frame, a web browser to receive and display web pages, a timer associated with web page content, an Internet address to retrieve web page content, and a central controller to maintain and access records—involves only generic Internet components used in conventional ways. Mot. at 10-13; *see also* Ex. 1 at 2:22-49. KlausTech's reliance on the "central controller" for alleged inventiveness is undermined by the fact that the '651 Patent indisputably describes the "central controller" as nothing more than a generic webserver and central processor. Mot. at 13 (citing Ex. 2 at 4:23-24). The '651 Patent's treatment of these components as well-known to those skilled in the art, without any unconventional elements, confirms that the "central controller" does not, and cannot, supply an inventive concept. *Id.*[8]

---

[8] KlausTech did not seek or obtain a construction of "central controller" that would include or require any unusual features or novel functions. Ex. 8 at 10-11. KlausTech inexplicably looks to unasserted dependent Claim 22 for support that asserted independent Claim 20 somehow includes an inventive concept, Opp. at 14, but the *Alice* Step Two inquiry necessarily must focus on the

1   Instead of identifying where in Claim 20 any non-generic components or unconventional

2   routines are claimed, KlausTech's Opposition includes a passing cite to *BASCOM Glob. Internet*

3   *Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349-52 (Fed. Cir. 2016). But, in *BASCOM*, the

4   claims "recite[d] a *specific, discrete implementation* of the abstract idea of filtering content," and

5   specified a "particular arrangement of elements" that was "a technical improvement." 827 F.3d at

6   1350 (emphasis added). In contrast, Claim 20 does not require a particular, unconventional

7   arrangement of elements representing a technical improvement on how timed advertisements can

8   be used on websites. As demonstrated by Google's element-by-element comparison of Claim 20 to

9   a basic timed newspaper advertising example, the implementation suggested by the actual elements

10  of Claim 20 is entirely conventional and has been practiced in various non-Internet contexts for

11  decades. KlausTech's suggestion of better "monitoring" and "control" of timed ads without any

12  reference to specific claim limitations reciting an unconventional way of achieving such monitoring

13  and control, Opp. at 11-12, 14-15, confirms that KlausTech's argument for patent eligibility rests

14  on rhetorical smoke-and-mirrors rather than actual claim elements. As in *In re Morsa*, "the

15  functions performed by the computer system at each step of the process . . . does nothing more than

16  instruct the user on how to implement the abstract idea using generic computer components." 809

17  F. App'x at 918; *see also Intellectual Ventures*, 792 F.3d at 1370 (rejecting patentability of an

18  invention that allegedly "in 'real time' customizes the web page based on the information it knows

19  about the particular viewer" in part because "the fact that the web site returns the pre-designed ad

20  more quickly than a newspaper could send the user a location-specific advertisement insert does

21  not confer patent eligibility"); *Customedia*, 951 F.3d at 1366.

22  Ultimately, other than attorney *ipse dixit*, KlausTech's Opposition offers no substantive

23  rebuttal to Google's argument on *Alice* Step Two, Mot. at 10-13, and certainly no "consider[ation

24  of] the elements of each claim both individually and 'as an ordered combination[,]'" *Alice*, 573

25  U.S. at 217. The Court should thus find the asserted claims unpatentable under Section 101.

26

27

---

28  limitations of the *asserted* claims, as KlausTech admits, Opp. at 9 (citing *Alice*, 573 U.S. at 217);
    *see ChargePoint*, 920 F.3d at 769.

GOOGLE'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS OF INVALIDITY

1

## V.     **CONCLUSION**

2          For the foregoing reasons, and those in Google's motion, the Court should grant judgment

3   on the pleadings that the asserted claims of the '651 Patent are invalid under 35 U.S.C. § 101.

4   DATED:  November 5, 2020                          PAUL HASTINGS LLP

5

6                                                    By:  */s/ Robert W. Unikel*

7                                                         ROBERT W. UNIKEL (*pro hac vice*)
                                                         robertunikel@paulhastings.com

8                                                         JOHN A. COTIGUALA (*pro hac vice*)
                                                         johncotiguala@paulhastings.com

9                                                         PAUL HASTINGS LLP
                                                         71 South Wacker Drive
                                                         45th Floor

10                                                        Chicago, Illinois  60606
                                                         Telephone:  1(312) 499-6000

11                                                        Facsimile:  1(312) 499-6100

12                                                        CHRISTOPHER W. KENNERLY (SB# 255932)
                                                         chriskennerly@paulhastings.com

13                                                        JOSHUA YIN (SB# 280891)
                                                         joshuayin@paulhastings.com

14                                                        PAUL HASTINGS LLP
                                                         1117 South California Avenue

15                                                        Palo Alto, California  94304-1106
                                                         Telephone:  1(650) 320-1800

16                                                        Facsimile:  1(650) 320-1900

17                                                        ROBERT R. LAURENZI (*pro hac vice*
                                                         application forthcoming)

18                                                        robertlaurenzi@paulhastings.com
                                                         PAUL HASTINGS LLP

19                                                        200 Park Avenue
                                                         New York, New York  10166

20                                                        Telephone:  1(212) 318-6000
                                                         Facsimile:  1(212) 319-4090

21

22                                                        GRANT N. MARGESON (SB# 299308)
                                                         grantmargeson@paulhastings.com

23                                                        PAUL HASTINGS LLP
                                                         101 California Street
                                                         48th Floor

24                                                        San Francisco, California  94111
                                                         Telephone:  1(415) 856-7000

25                                                        Facsimile:  1(415) 856-7100

26                                                        Attorneys for Defendant
                                                         Google LLC

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>CERTIFICATE OF SERVICE</u>

I certify that on the 5th day of November 2020, a true and correct copy of the foregoing document was served via the Court's ECF System on counsel of record in this case.

<u>*/s/ Robert W. Unikel*</u>
Robert W. Unikel

GOOGLE'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS OF INVALIDITY